## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

```
_____
                              :
ENRICO SALVATORE,             :
                              :        Civil Action No.
              Plaintiff,      :        09-4817 (NLH)
                              :
      v.                      :
                              :
VIKING SPORT CRUISERS, INC.   :
doing business as             :
VIKING YACHT COMPANY,         :        OPINION
                              :
              Defendant.      :
_____:
```

**APPEARANCES:**

STEVEN CRAIG GILLMAN
GILLMAN & LEVIN, P.C.
10 LAKE CENTER EXECUTIVE PARK
401 ROUTE 73 NORTH, SUITE 204
MARLTON, NJ 08053
*Attorney for Plaintiff*

BARRY BENJAMIN CEPELEWICZ
MEISELMAN, DENLEA, PACKMAN, CARTON & EBERZ, PC
1311 MAMARONECK AVENUE
WHITE PLAINS, NY 10605
*Attorney for Defendant*

**HILLMAN, District Judge**

Before the Court is defendant's motion for summary judgment. For reasons explained below, defendant's motion will be denied.

### I.   BACKGROUND

This product liability case arises out of a forklift accident that occurred on June 8, 2008. Plaintiff, Enrico

Salvatore, was a truck driver for Rancocas Metals, a company which provides raw metals to customers.  Plaintiff loaded his flat-bed truck with the day's deliveries including a bundle of aluminum angle iron, secured by shrink wrap, to be delivered to defendant, Viking Yacht Company.  The bundle consisted of 30 pieces of 16-foot long angle aluminum weighing approximately 388 pounds.  The metal bundle was placed in the middle of the flat-bed and other materials for other deliveries were placed along the sides of the truck.  Plaintiff drove to defendant's facility first and was anxious to get to his next stop which had requested an early morning delivery.

        Plaintiff was familiar with defendant's facility having delivered materials to them approximately twice a week for some time.  Viking's policy is that Viking employees are responsible for unloading materials delivered by vendors. Plaintiff went to defendant's receiving area and waited for defendant's employee, John Bramble, a forklift operator to remove the metal bundle.  Bramble brought the forklift to the side of the truck and raised the forks to a level higher than the sides of the truck.  Bramble could not insert the forks underneath the bundle because it was in the middle of the truck and the other materials were between it and the sides of the truck.  Neither plaintiff nor Bramble suggested removing the

other materials off the truck in order to insert the forks under the bundle.

To help unload the bundle, plaintiff used a canvas strap he had on his truck and looped one end around the bundle and the other end around one of the forks of the forklift in order to lift the bundle over the other materials in the truck. This procedure is known as "free rigging." Plaintiff and Bramble had used this procedure at Viking previously.

Plaintiff testified that he could not put the loop of the strap flush against the back of the fork because the bundle was in the middle of the truck and the forks only extended so far. The strap was placed approximately three to six inches from the front of the fork. After putting the strap on the fork, plaintiff signaled to Bramble to lift the bundle. Plaintiff then signaled for Bramble to stop because the load was not centered. Bramble lowered the fork and plaintiff readjusted the strap. After finding it stable, plaintiff signaled to Bramble to lift the fork. Bramble lifted the fork and then tilted the forks back so that the strap would not slip off the end. Bramble lifted the bundle with the forklift until it was high enough to clear the side gates of the truck. Plaintiff then signaled to Bramble to stop so that he could get off the truck. Plaintiff got off the truck and signaled to Bramble to

3

back up, which he did, and then told him to lower the bundle.

While Bramble was lowering the bundle, the end of the bundle started to angle.  Plaintiff testified that he reached up to grab the end of the bundle to help steady it, but the strap slid off the fork and the bundle came down before he touched it. Bramble testified that plaintiff touched the bundle before it slid off the fork.  In any event, the bundle fell and struck plaintiff's arm, knocking him to the ground.

Plaintiff filed a complaint alleging that his injuries were caused by defendant's negligence.

## II.  **JURISDICTION**

This Court exercises subject matter jurisdiction pursuant to 28 U.S.C. § 1332 (diversity).  Plaintiff is a citizen of Pennsylvania.  Defendant is a New Jersey corporation with its principal place of business in New Jersey.  Plaintiff has alleged the amount in controversy exceeds $75,000.00.

## III. **SUMMARY JUDGMENT**

Summary judgment is appropriate where the Court is satisfied that "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Celotex Corp. v. Catrett, 477 U.S.

4

317, 330 (1986); Fed. R. Civ. P. 56©).

An issue is "genuine" if it is supported by evidence such that a reasonable jury could return a verdict in the nonmoving party's favor. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A fact is "material" if, under the governing substantive law, a dispute about the fact might affect the outcome of the suit. Id. In considering a motion for summary judgment, a district court may not make credibility determinations or engage in any weighing of the evidence; instead, the non-moving party's evidence "is to be believed and all justifiable inferences are to be drawn in his favor." Marino v. Industrial Crating Co., 358 F.3d 241, 247 (3d Cir. 2004)(quoting Anderson, 477 U.S. at 255).

Initially, the moving party has the burden of demonstrating the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Once the moving party has met this burden, the nonmoving party must identify, by affidavits or otherwise, specific facts showing that there is a genuine issue for trial. Id. Thus, to withstand a properly supported motion for summary judgment, the nonmoving party must identify specific facts and affirmative evidence that contradict those offered by the moving party. Anderson, 477 U.S. at 256-57. A party opposing summary judgment

5

must do more than just rest upon mere allegations, general denials, or vague statements.  Saldana v. Kmart Corp., 260 F.3d 228, 232 (3d Cir. 2001).

### IV. DISCUSSION

Defendant moves for summary judgment on grounds that it did not breach any duty of care owed to plaintiff, and that the actions of its employee did not cause plaintiff's injuries. Defendant also moves to exclude the opinions of plaintiff's expert.

### A. Duty Owed by Defendant

"In order to sustain a common law cause of action in negligence, a plaintiff must prove four core elements: (1) a duty of care, (2) a breach of that duty, (3) proximate cause, and (4) actual damages."  Brunson v. Affinity Federal Credit Union, 199 N.J. 381, 400, 972 A.2d 1112 (2009) (internal citations and quotations omitted).  "A major consideration in the determination of the existence of a duty of reasonable care under 'general negligence principles' is the foreseeability of the risk of injury."  Alloway v. Bradlees, Inc., 157 N.J. 221, 230, 723 A.2d 960, 964 (N.J. 1999) (citing Carey v. Lovett, 132 N.J. 44, 57, 622 A.2d 1279 (1993); Weinberg v. Dinger, 106 N.J. 469, 485, 524 A.2d 366 (1987)).  In addition, the determination of a duty turns on a sense of fairness and "involves

identifying, weighing, and balancing several factors-the
relationship of the parties, the nature of the attendant risk,
the opportunity and ability to exercise care, and the public
interest in the proposed solution." Hopkins v. Fox & Lazo
Realtors, 132 N.J. 426, 439 (1993); see Carter Lincoln-Mercury,
Inc., Leasing Div. v. EMAR Group, Inc., 135 N.J. 182, 194, 638
A.2d 1288, 1294 (N.J. 1994) ("Subsumed in the concept of
foreseeability are many of the concerns we acknowledge as
relevant to the imposition of a duty: the relationship between
the plaintiff and the tortfeasor, the nature of the risk, and
the ability and opportunity to exercise care.").

        "It is axiomatic that 'the mere showing of an accident
causing injuries is not sufficient from which to infer
negligence.'" Fedorczyk v. Caribbean Cruise Lines, Ltd., 82
F.3d 69, 74 (3d Cir. 1996) (citing Hansen v. Eagle-Picher Lead
Co., 8 N.J. 133, 84 A.2d 281 (1951)). "Negligence is a fact
which must be proved; it will not be presumed." Id. "The
plaintiff must introduce evidence which provides a reasonable
basis for the conclusion that it was more likely than not that
the negligent conduct of the defendant was a cause in fact of
the injury. Id. (citing W. Page Keeton et al., Prosser and
Keeton on the Law of Torts § 41, at 269 (5th ed. 1984)).

        The facts show that plaintiff loaded the bundle in the

middle of the truck necessitating the use of a canvas strap or "free rigging" rather than allowing the forks to fit underneath the bundle.  There is no OSHA regulation against this practice and plaintiff and Bramble had used this procedure without incident at Viking previously.[1]  After putting the strap on the fork, plaintiff signaled to Bramble to lift the bundle.  There is no OSHA regulation prohibiting the use of "spotters" or requiring that the forklift driver come down off the forklift in order to inspect a load before lifting it.  There is an OSHA regulation, however, stating that "only stable or safely arranged loads shall be handled."  See 29 CFR 1910.178(o)(1). Bramble relied on plaintiff to secure the strap in place which, as we have noted, could not have been placed flush to the back of the fork because of the placement of the bundle.  There is no dispute that after plaintiff put the strap on the fork, that Bramble tilted the forks back.  Plaintiff testified that he then told Bramble to stop so that he could get down from the back of the truck in order to assist while Bramble lowered the bundle.

Viewing the facts in the light most favorable to plaintiff, a question arises whether it was reasonable for Bramble to rely on plaintiff's decision to put the strap on one

---

[1]        "OSHA regulations have long been admissible as evidence of an industry standard for safety."  Costantino v. Ventriglia, 324 N.J.Super. 437, 441-43 (App.Div. 1999).

fork a few inches from the end of the tapered end, and whether
it was reasonable for him to rely on plaintiff's assessment that
the load was stable.  In addition, there is an OSHA regulation
prohibiting anyone from standing under the forks.  See 29 CFR
1910.178(m)(2) (prohibiting anyone from standing or passing
under the elevated portion of any truck, whether loaded or
empty).  Both plaintiff and Bramble testified that plaintiff was
not directly under the forks.  To be sure, plaintiff testified
that he "wasn't under the load"; that he was "off to the side –
to the side of the load."  Bramble also testified that plaintiff
was never under the forks and knew that pursuant to OSHA
regulations, pedestrians are not permitted under an elevated
load.

However, the testimony regarding what happened in the
few seconds before the injury suggests that plaintiff was under
the bundle in a way that was not permissible under OSHA
regulations.  Plaintiff testified that he was close enough to
the bundle to attempt to grab it and assist in lowering it.
Bramble testified that plaintiff got off the truck and reached
up to level the bundle while Bramble was lowering it.  Bramble
also testified that as plaintiff was running backwards, the
bundle fell and hit his arm.  Thus, despite plaintiff's apparent
good intentions to assist in helping to lower the bundle, it is

9

clear that plaintiff was in an area where he should not have been.  The policy underlying OSHA regulations is create a safe work environment.  See Reich v. Manganas, 70 F.3d 434, 437 (6th Cir. 1995) (noting that the stated purpose of OSHA legislation is to assure safe, healthful work environments).  Therefore, this Court finds that being close enough to physically touch a bundle weighing over 300 pounds suspended by a strap attached to one elevated fork on a forklift violates the OSHA regulation prohibiting pedestrians from standing or passing underneath an elevated portion of a truck.

Violation of an OSHA regulation, however, may only be considered as some evidence of negligence.  "A finding of an OSHA violation does not ipso facto constitute a basis for assigning negligence as a matter of law; however, OSHA regulations are pertinent in determining the nature and extent of any duty of care."  Costa v. Gaccione, 408 N.J.Super. 362, 369-70, 975 A.2d 451, 455 (App.Div. 2009) (internal citations and quotation marks omitted).  A "duty of care is not per se imposed solely on a finding of an OSHA regulatory violation." Id. 408 N.J.Super. at 371, 975 A.2d at 457.  "Rather, violations of OSHA are to be considered with other 'fairness' factors in determining the existence of a duty and the duty's scope." Id. 408 N.J.Super. at 373, 975 A.2d at 457.

Therefore, even if defendant violated an OSHA regulation, the issue remains whether it was foreseeable that plaintiff could be injured. According to defendants, the forks were up and plaintiff grabbed the bundle before it came down. According to plaintiff, the forks were either level or had come down and the forklift stopped abruptly which caused the bundle to slide off. It is for a jury to decide which version is correct, or whether both are partly correct - e.g., while the forks did level off, the pressure of plaintiff's hand pulling on the bundle caused it to fall.

In any event, there is a dispute of material fact and defendants have not shown that they owed no duty to plaintiff or that the injury could not have been foreseeable. Therefore, their motion for summary judgment as to plaintiff's claim of negligence will be denied.[2]

---

[2]     Because the Court denies summary judgment on this ground, there is no need to address plaintiff's alternative arguments. The Court also rejects at this time plaintiff's argument that the doctrine of *res ipsa loquitur* applies because plaintiff has not proved each element on summary judgment and has not shown that plaintiff was not contributorily negligent. See Eaton v. Eaton, 119 N.J. 628, 575 A.2d 858, 863 (1990) (Res ipsa loquitur depends on three conditions: (1) the accident was one which ordinarily does not happen unless someone was negligent, (2) the instrumentality which caused the accident was under the exclusive control of the defendant, and (3) the event was not caused by any neglect on the part of the injured person."); Kahalili v. Rosecliff Realty, Inc., 26 N.J. 595, 606, 141 A.2d 301 (1958).

B.    **Plaintiff's Expert**

Defendant argues that plaintiff's expert's opinion should be precluded because he is unqualified to offer accident simulation or investigation analysis, his opinions are unreliable and untrustworthy, and because his opinions do not fit the evidence.

Federal Rule of Evidence 702 governs the admissibility of expert testimony.  Rule 702 states:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

Fed.R.Evid. 702.

The three requirements outlined in Rule 702 are referred to as: qualification, reliability and fit.  Calhoun v. Yamaha Motor Corp., U.S.A., 350 F.3d 316, 321 (3d Cir. 2003) (citing Schneider v. Fried, 320 F.3d 396, 405 (3d Cir. 2003)). The Third Circuit explained the three requirements as follows:

> First, the witness must be qualified to testify as an expert.  Qualification requires that the witness possess specialized expertise. We have interpreted this requirement liberally, holding that a broad range of knowledge, skills, and training qualify an expert

as such.  Second, the testimony must be reliable.  In
other words, the expert's opinion must be based on the
methods and procedures of science rather than on
subjective belief or unsupported speculation; the
expert must have good grounds for his or her belief.
An assessment of the reliability of scientific
evidence under Rule 702 requires a determination as to
its scientific validity.  Third, the expert testimony
must fit, meaning the expert's testimony must be
relevant for the purposes of the case and must assist
the trier of fact.

Id. (internal quotations and citations omitted).  Defendant
challenges plaintiff's expert, Ronald Cusumano, on all three
requirements.

### 1.  Qualification

Defendant argues that although Cusumano has experience
in heavy equipment maintenance and repair, and training in
forklift operation and safety, that he has no education,
training or formal experience in engineering or physics, and no
prior experience in accident reconstruction.  Particularly,
defendant argues that Cusumano is unqualified to offer an
opinion regarding the cause of the accident based on his
observations during a simulation of the accident.

Plaintiff argues that Cusumano is not being offered as
an accident reconstructionist, but rather is offering an opinion
as to the cause of the accident based on his experience as a
mechanic and trainer.  Plaintiff also argues that the simulation

13

conducted by Cusumano was not to recreate the accident, but to test his theories about the cause of the accident.

The Third Circuit instructs that the qualification requirement should be interpreted liberally, and that "a broad range of knowledge, skills, and training qualify an expert as such." Calhoun, 350 F.3d at 321 (citing In re Paoli R.R. Yard PCB Litig., 35 F.3d 717, 741 (3d Cir. 1994) ("Paoli II")); Thomas & Betts Corp. v. Richards Mfg. Co., 342 Fed.Appx. 754, 760-61 (3d Cir. 2009). Rule 702 requires the witness to have "specialized knowledge" and the basis of this specialized knowledge "can be practical experience as well as academic training and credentials." Waldorf v. Shuta, 142 F.3d 601, 625 (3d Cir. 1998) (citing American Tech. Resources v. United States, 893 F.2d 651, 656 (3d Cir. 1990); Hammond v. International Harvester Co., 691 F.2d 646, 653 (3d Cir. 1982)). The Third Circuit interprets the specialized knowledge requirement liberally, which "extends to the substantive as well as the formal qualification of experts." Id. (citing In re Paoli, 35 F.3d at 741). "However, 'at a minimum, a proffered expert witness ... must possess skill or knowledge greater than the average layman....'" Id. (citing Aloe Coal Co. v. Clark Equip. Co., 816 F.2d 110, 114 (3d Cir. 1987)).

14

Here, Cusumano has extensive experience as a trainer, instructor, and technician of forklift trucks.  According to his curriculum vitae, he has been instructor for the U.S. Army on heavy equipment maintenance, and a driver instructor for twelve years; he has been an instructor at the Lincoln Technical Institute teaching automotive mechanics for two years; he has been a service technician diagnosing and repairing forklift trucks for at least fourteen years; a shop supervisor training apprentice mechanics for three years; and a lift truck trainer for fourteen years.  Although Cusumano does not have a formal education aside from a few post-secondary school courses, he does have substantive knowledge above that of a lay person that qualifies him as an expert regarding the operation of the forklift and possible mechanical reasons for the cause of the accident.  Cusumano would also be qualified to provide an opinion regarding OSHA regulations.  See Thomas, 342 Fed.Appx. at 761 (finding expert's testimony would not be unhelpful to a finder of fact merely because it referenced the rubber molding industry generally and not the subset industry of underground electrical connector manufacturing); Pineda v. Ford Motor Co., 520 F.3d 237, (3d Cir.  2008) (finding expert's expertise in the stresses and other forces that might cause a material to fail

was more than sufficient to satisfy Rule 702, and that the
expert did not need to be substantively qualified in the design
of automobile rear liftgates or the drafting of service manual
instructions); Holbrook v. Lykes Bros. S.S. Co., 80 F.3d 777,
782 (3d Cir. 1996) (finding it "an abuse of discretion to
exclude testimony simply because the trial court does not deem
the proposed expert to be the best qualified or because the
proposed expert does not have the specialization that the court
considers most appropriate.").

        With regard to the simulation, however, Cusumano would
not be qualified to provide a video attempting to reconstruct
the accident.  Cusumano is not an accident reconstruction expert
or a biomechanics expert.  He holds no degree in engineering.
Given that Cusumano is not qualified to provide an opinion as to
accident reconstruction, the video will not be permitted as
expert evidence as to the events surrounding the accident.  See
Smith v. Liberty Chrysler-Plymouth-Dodge, Inc., 285 Ga.App. 606,
609, 647 S.E.2d 315, 318-19 (Ga.App. 2007) (Although expert was
an experienced mechanic and seasoned police officer, he had no
experience in the area of accident reconstruction, nor did he
have experience in evaluating the circumstances surrounding
catastrophic mechanical failure).

Plaintiff argues that the video was not intended as a recreation of the accident, but as a test to ensure that the general principles involved in Cusumano's theories were sound, and to illustrate that his principles were testable.  Plaintiff states that the video is admissible as a demonstration of Cusumano's basic principles.

There is a higher threshold for admissibility of visual demonstrations that attempt to recreate an accident because they are "significantly more likely to confuse the jury than depictions which merely 'illustrate principles forming an expert's opinion.'"  Altman v. Bobcat Co., 349 Fed.Appx. 758, (3d Cir. 2009) (citing Hinkle v. City of Clarksburg, 81 F.3d 416, 425 (4th Cir. 1996); Harkins v. Ford Motor Co., 437 F.2d 276, 278 (3d Cir. 1970)).  "Thus, for demonstrative evidence closely resembling the actual accident, courts generally require the proponent to establish that the demonstration shares substantial similarity with accident conditions."  Id.  "By contrast, if a demonstration does not appear to recreate the accident, Rule 403 generally does not require a foundational showing of similarity with accident conditions."  Id.

Since plaintiff is not seeking to use the video to recreate the accident, he does not need to have a "foundational

showing of similarity with accident conditions."  Therefore,

Cusumano may rely on the test recorded on the video as part of

his opinion, but the video cannot be introduced as a re-creation

of the accident, and Cusumano may not testify as an accident

reconstruction expert.[3]  Otherwise, Cusumano is qualified under

Rule 702 and Daubert.

    **2.  Reliability**

      Defendant also argues that Cusumano's opinion is not

reliable because the simulation he conducted was flawed and his

analysis is contradicted by the undisputed facts.

      Factors the Court should consider in determining

whether an expert's opinion is reliable are:

      (1) whether a method consists of a testable
hypothesis;
      (2) whether the method has been subject to peer
      review; (3) the known or potential rate of error;
      (4) the existence and maintenance of standards
controlling the technique's operation;
      (5) whether the method is generally accepted;
      (6) the relationship of the technique to methods which
have been established to be reliable;
      (7) the qualifications of the expert witness
testifying based on the methodology; and
      (8) the non-judicial uses.

Schneider ex rel. Estate of Schneider v. Fried, 320 F.3d 396,

405 (3d Cir. 2003) (citing Paoli II, 35 F.3d at 742 n. 8 (citing

---

    [3]     The Court is not ruling at this time whether or not the video can be admitted into
evidence at trial.  This Opinion only determines that Cusumano may rely

Daubert, and United States v. Downing, 753 F.2d 1224 (3d Cir. 1985)).  These factors "are neither exhaustive nor applicable in every case."  Pineda, 520 F.3d at 248 (citing Kumho Tire Co., Ltd. v. Carmichael, 526 U.S. at 137, 151, 119 S.Ct. 1167 ("noting that Daubert itself 'made clear that its list of factors was meant to be helpful, not definitive'") (other citations omitted).

The trial court has "considerable leeway in deciding in a particular case how to go about determining whether particular expert testimony is reliable."  Kumho Tire, 526 U.S. at 152, 119 S.Ct. at 1176; Viking Yacht Co. v. Composites One LLC, 613 F.Supp.2d 626, 634 (D.N.J. 2009) ("an expert's testimony is admissible so long as the process or technique the expert used in formulating the opinion is reliable.") (citing Pineda, 520 F.3d at 247 (quoting In re Paoli R.R. Yard PCB Litig., 35 F.3d 717, 742 (3d Cir. 1994) (internal quotation marks omitted)).  The Third Circuit has cautioned that "the standard for determining reliability 'is not that high,' [] even given the evidentiary gauntlet facing the proponent of expert testimony under Rule 702."  In re TMI Litigation, 193 F.3d 613, 665 (3d Cir. 1999).

---

on the test depicted in the video in forming his opinion.

Defendant argues that Cusumano's opinion is unreliable because the forks on the forklift used in his simulation were six inches shorter, and had slightly less taper than the forks on the accident forklift.  Defendant also argues that there are discrepancies between the placement of the strap on the fork by Cusumano in the simulation, and the testimony by the two witnesses which place the strap farther up toward the tip of the fork on the accident forklift.  Defendant also states that Cusumano opines that Bramble operated the forklift erratically even though neither witness testified to that fact.

As stated above, Cusumano cannot rely on the simulation to reconstruct the accident.  Cusumano can, however, proffer hypotheses as to how the accident occurred based on his experience with forklifts and test his theories.  Although defendant's disagreement with Cusumano's opinions presents a strong counter-argument to Cusumano's theories, disagreement with an expert's opinion does not render it unreliable.  See U.S. v. Williams, 235 Fed.Appx. 925, 928 (3d Cir. 2007) ("The requirement of reliability is lower than the standard of correctness.  A judge can find an expert opinion reliable if it is based on 'good grounds' or methods and procedures of science rather than on subjective belief or unsupported speculation")

20

(citing Daubert, 509 U.S. at 590, 113 S.Ct. 2786)).  "An
expert's testimony is admissible so long as the process or
technique the expert used in formulating the opinion is
reliable."  Viking Yacht Co, 613 F.Supp.2d at 634.  Here,
Cusumano presented a theory based on his experience as to how
this accident occurred.  He then tested his theory using a
forklift.  Thus, the process or technique used by Cusumano is
testable.  Whether his theory is flawed in defendant's opinion
goes to the weight and credibility of Cusumano' testimony, not
its admissibility.  See Crowley v. Chait, 322 F.Supp.2d 530, 541
(D.N.J. 2004)(revisions by experts were not evidence of flawed
methodology, but raised questions that went to the weight and
credibility of the testimony, not to its admissibility); Voilas
v. General Motors Corp., 73 F.Supp.2d 452, 459 (D.N.J. 1999)
(finding that challenge to expert's decision to discard certain
options goes to the weight to be accorded to the expert's
opinion rather than its admissibility).  Therefore, Cusumano's
opinion meets the requirement of reliability.

        **3.  Fit**

      The third and final requirement is that the expert
testimony "fit," meaning, "the expert's testimony must be
relevant for the purposes of the case and must assist the trier

of fact." Calhoun, 350 F.3d at 321.  A connection must exist
"... between the expert opinion offered and the particular
disputed factual issues in the case." TMI Litigation, 193 F.3d
at 670 (citing Paoli II, 35 F.3d at 743).  In order for an
expert's testimony to fit, "the scientific knowledge must be
connected to the question at issue." Paoli II, 35 F.3d at 745
n. 13.  "Fit is not always obvious, and scientific validity for
one purpose is not necessarily validity for other unrelated
purposes." TMI Litigation, 193 F.3d at 670.  "Expert testimony
which does not relate to any issue in the case is not relevant
and, ergo, non-helpful." Daubert, 509 U.S. at 591, 113 S.Ct.
2786 (citations omitted).  The standard for fit is "not that
high" but "is higher than bare relevance." Paoli II, 35 F.3d at
745.

        Defendant argues that Cusumano's opinion does not fit
because it rests on the incorrect assumptions that: 1) defendant
violated OSHA by allowing plaintiff to remain under a suspended
load; 2) defendant violated OSHA by failing to inspect the load
for instability; 3) the forks were not titled backwards; 4) that
the forklift was operated in an erratic manner by Bramble; 5)
that the forklift was not properly maintained; and 6) that
defendant was required to modify the forklift to accommodate

free-rigging.

        With regard to the first assumption, as stated above,
such assumption is correct since the Court has found that even
if plaintiff was not standing directly under the forklift, he
was close enough to the suspended bundle that he could touch it
which violated OSHA regulations.  As for the second assumption,
Bramble relied upon plaintiff's assessment that the load was
stable.  If the jury finds such behavior reasonable, then
Bramble would not have violated OSHA regulations regarding load
stability.  If, however, relying on plaintiff on that issue was
found to be unreasonable, then defendant may have violated OSHA.
At this point, it cannot be said that Cusumano's assumption is
incorrect since it depends in part on the jury's findings.

        Cusumano's third assumption is that the forks were
tilted downward at the time of the accident.  Defendant argues
that both plaintiff and Bramble testified that before Bramble
started to lift the bundle, he tilted the forks back.  Plaintiff
testified that the forks were tilted back before the lift and
did not have any specific recollection of the forks tilting
downward.  Bramble maintains that they were back the whole time.
However, Cusumano does not base his theory solely on operator
error.  He also rests this assumption on failure of the

23

defendant to maintain the forklift's hydraulic system resulting
in "tilt-drift" whereby the system loses pressure and causes the
forks to drift downward after a load is placed on the forks.  In
support of this theory, Cusumano cites to several instances of
failure by the defendant to properly maintain the forklift
according to maintenance records.

      The fourth assumption by Cusumano is that the forklift
was operated in an erratic manner, or moved abruptly due to
improper maintenance.  Cusumano opined that the downward
position of the forks would not be enough to cause the bundle to
slip because the weight of the load suspended from a single
point is sufficient to secure it in place.  During testing, he
determined that if the forks were pointed downward and the
forklift stopped suddenly, the bundle would swing which enabled
the strap to slide forward.  Defendant points out that Bramble
states he slowly backed up the forklift and that plaintiff did
not testify that Bramble operated the forklift in an erratic
manner.  Even if no operator error occurred, however, Cusumano
also opines that abrupt movement was caused by the "negligently
maintained condition of the forklift."  He bases his opinion on
defendant's maintenance records for the accident forklift.

      With regard to the fifth assumption, Cusumano may rely

24

on defendant's maintenance records to reach his conclusion that the forklift was poorly maintained and caused the accident. Cusumano may also rely on defendant's records to reach his conclusion that a proper inspection checklist was not maintained.

Finally, Cusumano may opine that an attachment to the fork would have prevented the accident.  The attachment, or "jib," is one that is used in the industry for loads that are "free-rigged."  Whether the frequency of "free-rigging" was such that a modification of the forklift was required, or that such a modification was appropriate in these circumstances, is a disputed issue.

Therefore, Cusumano's opinion meets the requirements under Rule 702 and <u>Daubert</u>.

### IV.  <u>CONCLUSION</u>

For the foregoing reasons, defendant's motion for summary judgment will be denied.

s/Noel L. Hillman<br>
NOEL L. HILLMAN, U.S.D.J.

At Camden, New Jersey<br>
Dated: March 29, 2012